IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RENETTA CORDLE, *et al.* | ) | Civil Action No. C2-01-1000 |
| | ) | |
| Plaintiffs, | ) | Judge Smith |
| | ) | |
| vs. | ) | Magistrate Judge King |
| | ) | |
| K.C.J., INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION OF DEFENDANTS K.C.J., INC., J. LARRY CUSTER AND DEBRA CUSTER TO ENFORCE SETTLEMENT AGREEMENT AND DISMISS CLAIMS WITH PREJUDICE

Defendants K.C.J., Inc., J. Larry Custer and Debra Custer (collectively referred to herein as "Defendants") respectfully move this Court for an Order enforcing the settlement agreement entered into by the Plaintiffs and Defendants in this matter, which is attached hereto as Exhibit A. Defendants further move this Court for an Order dismissing all claims with prejudice.

As grounds for this Motion, Defendants submit Plaintiffs, through their counsel, signed and agreed to the settlement terms set forth in the settlement agreement attached hereto as Exhibit A. Plaintiffs, however, unjustifiably contend that they are "rescinding" the settlement agreement. In spite of Plaintiffs' unilateral attempt to rescind the agreement, Exhibit A, which was drafted by counsel for Plaintiffs and signed by counsel for both parties, is a binding and enforceable agreement under Ohio and federal law. Thus, an Order should issue from this Court enforcing the settlement agreement entered into by the parties and dismissing all claims with prejudice.

{437102:}

The reasons for this Motion are more fully set forth in the Memorandum in Support, which is attached hereto and incorporated herein.

/s/ Douglas B. Schnee
WILLIAM J. O'NEILL (0029936)
DOUGLAS B. SCHNEE (0063643)
McDonald Hopkins Co. LPA
2100 Bank One Center, 600 Superior Ave., E.
Cleveland, Ohio 44114
(216) 348-5400/(216) 348-5474 - Fax

Attorneys for Defendants Debra Custer, J. Larry Custer and K.C.J., Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RENETTA CORDLE, *et al.* | ) | Civil Action No. C2-01-1000 |
| | ) | |
| Plaintiffs, | ) | Judge Smith |
| | ) | |
| vs. | ) | Magistrate Judge King |
| | ) | |
| K.C.J., INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE**
**SETTLEMENT AGREEMENT AND DISMISS CLAIMS WITH PREJUDICE**

**I.  FACTS**

This matter is brought by Plaintiffs as a collective action under the Fair Labor Standards Act, 29 U.S.C. §216(b) ("FLSA").  Plaintiffs are former employees of three McDonald's Restaurants, which are or were owned and operated by Defendant K.C.J., Inc.  The Complaint in this case was filed on October 16, 2001.  The 26 Plaintiffs which remain in this action are pursuing claims for unpaid wages under the FLSA, Ohio's statutory counterpart, R.C. §4113, et seq., as well as claims for fraud and promissory estoppel associated with the alleged non-payment of wages.[1]  Defendants have denied and continue to deny all of Plaintiffs' allegations.

---

[1] During an October 8, 2003 telephone status conference with Magistrate Judge King, counsel for Plaintiffs indicated Plaintiffs did not intend to oppose the Motion of Defendants to Dismiss Plaintiffs Kyle Smith, Dallas Pickering, Karen Bullock and William Roberts for want of prosecution and failure to appear for deposition, which is presently pending.  If the Court chooses to dismiss these four Plaintiffs from the action, Defendants do not seek to enforce the settlement agreement with these four individuals, since if they fail to oppose this motion, it will be clear they have no intention to be bound by the settlement agreement.

{437102:}

On September 20, 2003, following extensive negotiation between counsel for the parties, all Plaintiffs and Defendants agreed upon a settlement of the case. The terms of the settlement agreement are memorialized in a letter which was drafted by Plaintiffs' counsel, and signed by counsel for both Plaintiffs and Defendants. (<u>See</u> Exhibit A)

The essential terms of the settlement agreement, as set forth in Exhibit A, are as follows:

- Defendants agreed to make individual payments to the Plaintiff class totaling $36,600.00[2]

- Defendants agreed to pay $112,400.00 to counsel for Plaintiffs as payment for all costs and attorney's fees.

- Plaintiffs agreed never to seek employment or re-employment with Defendants or any McDonald's restaurant owned or operated by them.

- The parties agreed on a division, for tax purposes, of the settlement payments between those to be reported as 1099-miscellaneous payments and those to be reported as W-2 wages.

- The parties agreed that with the exception of lead Plaintiff Renetta Cordle, Plaintiffs would release all claims which were or could have been asserted in the lawsuit. Renetta Cordle agreed to release all claims of any kind against Defendants.

- The parties agreed Plaintiffs would indemnify and hold Defendants harmless for any tax consequence or liability associated with any settlement payments.

- The parties agreed the terms of the settlement would be promptly memorialized in a written settlement agreement and release.

- The parties agreed they would jointly move the Court for adoption and approval of the terms of the class-action settlement.

- The parties agreed that "[i]f there are any disagreements in regard to the terms to be included within the parties' written settlement agreement and release, or in regard to any other aspect of this settlement, the parties agree that the dispute shall be resolved by Magistrate Judge King."

---

[2] Included in this amount is a $5,000.00 payment to Rebecca O'Brien, who pursued her own claims in <u>Teresa O'Brien v. K.J.C., Inc.</u>, U.S. Dist.Ct. S.D. Ohio Case No. C-2-03-747 pending before Judge Frost. Ms. O'Brien pursued her claims separately because she did not timely "opt-in" to the Plaintiff class. Defendants are separately moving to enforce the $5,000 settlement with Mr. O'Brien in her case before Judge Frost.

(See Exhibit A).

Again, as set forth above and in the attached Exhibit A, each of these core settlement terms is memorialized in a writing signed by counsel for both parties.  Moreover, it is significant that these settlement terms were drafted by counsel for Plaintiffs, not counsel for Defendants.

On September 22, 2003, counsel for Plaintiffs transmitted Plaintiffs' proposed Settlement Agreement and Mutual Release, Joint Motions for Approval and Adoption of Settlement, Stipulated Judgments, Stipulated Dismissals and Plaintiffs' counsel's completed W-9 form.  (See Exhibit B)  It is significant that Plaintiffs' counsel transmittal letter which accompanied these documents refers to ". . . the settlement reached on Saturday . . ." Id.

On September 25, 2003, counsel for Defendants transmitted proposed modifications of the settlement agreement to Plaintiffs' counsel, along with proposed modified stipulated judgments.  (See Exhibit C)  Plaintiffs' proposed Stipulated Judgments, in which the Court would accept and adopt the class action settlement, contained language which stated judgment would be entered in favor of Plaintiffs and against Defendants for the amounts referenced in the settlement agreement.  Defendants rejected this language on the basis it was not part of the settlement, was not required by law and ran contrary to the purpose of the settlement.  Defendants proposed several other modifications to the settlement agreement which did not affect its material terms.  Indeed, the core terms of the settlement, i.e., a total payment of $149,000.00 in exchange for a release of claims and dismissal of the lawsuit, were not in dispute.

On September 26, 2003, counsel for Plaintiffs transmitted another draft of the proposed settlement agreement to counsel for Defendants, which modified Defendants' proposed settlement agreement regarding language of the releases and a number of other

{437102:}                                              3

non-essential issues. (See Exhibit D) Counsel for Plaintiffs did not accept Defendants' proposed modifications to the proposed judgments and insisted upon their original proposed language, in which judgment would be entered in favor of Plaintiffs against Defendants. Id. Counsel for Plaintiffs also rejected other modifications to the settlement agreement proposed by counsel for Defendants.

On September 29, 2003, counsel for Defendants transmitted a letter to Plaintiffs' counsel which substantially narrowed the outstanding issues between the parties. (See Exhibit E) According to Defendants, the remaining issues for resolution of the settlement were as follows:

1. proposed modifications to the mutual releases;

2. proposed modifications to the settlement agreement which made clear that the settlement and attorney's fee payments would only be paid upon Defendants' receipt of signed releases from Plaintiffs. Counsel for Plaintiffs proposed (and insisted) that all payments under the agreement be made prior to the receipt of any signed release;

3. Plaintiffs continued to insist that the Stipulated Judgments adopting and approving the settlement agreement contain a confession of monetary judgment in favor of Plaintiffs and against Defendants;

4. Plaintiffs refused to include standard language in the settlement agreement which stated that Defendants did not admit liability for the claims at issue in the litigation.

It is again significant that at this point in time, the core and material terms of the settlement, i.e., a payment of a total of $149,000.00 in exchange for a release of claims and dismissal of the lawsuits, remained undisputed. The issues which remained unresolved pertained largely to the mechanics of the settlement and the precise language of the releases and proposed judgment entries.

On September 30, 2003, counsel for Plaintiffs responded to counsel for Defendants' September 29, 2003 letter with a letter attaching another revised settlement agreement, and

proposed Motions for Approval and Adoption of the Settlement and Proposed Judgment Entries relating to the same. (See Exhibit F)

On October 1, 2003, counsel for the parties exchanged several emails pertaining to the settlement agreement. The email exchange was precipitated by the request of counsel for Defendants for a conference with Magistrate Judge King to assist in resolving the outstanding settlement issues. As stated in the September 20, 2003 settlement agreement, this was the agreed upon procedure for resolving disputes relating to the settlement.

In counsel for Defendants' October 1, 2003 email to Plaintiffs' counsel, Defendants again isolated the issues which needed to be resolved at that time. (See Exhibit G) Counsel for Defendants then wrote to Magistrate Judge King on October 2, 2003 seeking the Court's assistance on these remaining issues:

1. The timing of the payments to Plaintiffs and their counsel, i.e., whether Defendants were entitled to signed releases prior to any exchange of funds;

2. The language of the stipulated judgment entries, in which Plaintiffs proposed, but Defendants refused, language amounting to a stipulation of judgment against Defendants and in favor of Plaintiffs;

3. Defendants' proposal for the inclusion of a standard "non admission of liability" clause.

(See Exhibit H)

By virtue of the issues raised in the October 2, 2003 letter to Magistrate Judge King, Defendants communicated to Plaintiffs' counsel that with the exception of these three issues, Defendants agreed to substantially all of the language contained in Plaintiffs' proposed September 30, 2003 Settlement Agreement.[3]

Magistrate Judge King agreed to convene a telephonic statues conference with counsel to discuss settlement issues on October 8, 2003. On the evening of October 7, 2003,

---

[3] Defendants did not agree to pay interest on the settlement payments under any circumstances. Therefore, Defendants did not and do not agree to the last sentence of the first paragraph of the September 30, 2003 draft.

{437102:}  5

the day prior to the scheduled conference, counsel for Plaintiffs faxed a letter to counsel for Defendants asserting, for the first time, that Plaintiffs were "misled" with regard to an alleged material fact concerning the settlement agreement. In particular, counsel for Plaintiffs stated, in pertinent part:

> This is to advise you that our clients will rescind the September 20, 2003 settlement agreement unless certain conditions are met. The reason is simple: we have grounds to believe that your firm and its clients misled us about a material fact upon which our Firm and its clients both relied in developing our settlement posture and in reaching agreement with your clients on September 20, 2003.
>
> Specifically, recent events have lead us to believe that your firm and its clients misled our Firm and clients into believing that your clients did not have insurance coverage regarding Plaintiffs' claims, when in fact they do have coverage.
>
> In their Initial Disclosures, you firm and its client indicated that Defendants possibly had insurance coverage and promised to make a copy of the policy available to Plaintiffs at a later time (see enclosed Exhibit A). As you know, you clients were obligated to produce to Plaintiffs for inspection and copying any insurance policy, nor did they ever make any available to us for inspection on any of the many visits we made to Minster to review your clients' records.

(See Exhibit I).

Counsel for Defendants promptly responded to the October 7, 2003 correspondence and advised counsel for Plaintiffs that no misrepresentations of any kind were ever made on the issue of insurance coverage and that the issue of insurance was never discussed or made a topic of any settlement discussions. (See Exhibit J). More specifically, contrary to the baseless allegations of Plaintiffs' counsel, the issue of the existence of insurance coverage was not the subject of any discussions between counsel for the parties at mediation or at any other time. (See Affidavit of William J. O'Neill, Esq. attached hereto as Exhibit K). Moreover, as Plaintiffs' counsel correctly points out in his October 7, 2003 letter (Exhibit I),

Defendants served Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1) upon Plaintiffs in this case which specifically stated:

> A copy of a policy of insurance which may be applicable to some of Plaintiffs' claims will be made available.

(Defendants' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), attached hereto as Exhibit L).

The Initial Disclosures were served upon counsel for Plaintiffs nearly two years ago in January, 2002 and the policy of insurance which is referenced in the Initial Disclosures has always remained available for inspection and copying to Plaintiffs under Fed. R. Civ. P. 34. Counsel for Plaintiffs, however, never made arrangements to inspect this policy and did not make any request for a copy of this policy until October 8, 2003 (the day after Plaintiffs' purported attempt to rescind the settlement agreement), which was nearly two years after Defendants disclosed the existence of the insurance policy. Plaintiffs' allegations that a "promise" was made regarding availability of the insurance policy is clearly false and is contradicted by the very language of the Initial Disclosures.

In response to Plaintiffs' counsel's threat to unilaterally rescind the settlement agreement, counsel for Defendants further advised Plaintiffs that although they never sought discovery or ever made inquiry on this issue, there nevertheless is no insurance coverage for Plaintiffs' wage-related claims, but that Defendants' insurer agreed to contribute to the settlement to avoid further litigation costs. (Exhibit J).

In response to Defendants' counsel's October 7. 2003 correspondence, counsel for Plaintiffs transmitted a letter to counsel for Defendants on the same date indicating:

> As a follow up to my faxed letter to you earlier today and your letter of a few moments ago, I am writing to advise you that our clients hereby rescind the settlement reached on September 20, 2003 in the above matters.

(See Exhibit M).

{437102:}                              7

As grounds for Plaintiffs' purported rescission of the settlement agreement they candidly admit they entered into, Plaintiffs' counsel stated:

> This rescission is principally based on two things. First, your clients have improperly insisted that new, materials terms be included in the parties' settlement agreement – terms that were never negotiated between the parties and are not included in the letter agreement that you signed on September 20, 2003. Second, you have confirmed that your firm misled us when Bill O'Neill said that your clients' had no insurance coverage in regard to the *Cordle* case. Your denial of this misrepresentation, coupled with your curious attempt to explain it away by suggesting that there really "is no coverage," is positively Clintonesque in light of your admission that there always was an insurance policy and your acknowledgement that the insurance carrier is contributing money toward the settlement.

Id.

As set forth above in detail, Plaintiffs' assertions that Defendants "insisted" on new material terms be included in the settlement agreement is unfounded. All core and material terms of the settlement are contained in the September 20, 2003 letter drafted by Plaintiffs' counsel. Plaintiffs acknowledge a settlement was reached on September 20, 2003 and Plaintiffs are therefore bound by these terms. Plaintiffs' contentions regarding the existence or lack of insurance are baseless in view of the fact that in January, 2002, Defendants disclosed and Plaintiffs were therefore aware of the existence of a policy of insurance which may have been applicable to Plaintiffs' claims. Plaintiffs admit they received these initial disclosures and have failed to explain (nor can they explain) how they could have conceivably been "misled" on an issue disclosed to them in writing nearly two years ago. Perhaps more critically, the issue of insurance is simply irrelevant to the settlement Plaintiffs agreed to on September 20, 2003. In short, Plaintiffs' unilateral attempt to disavow a settlement agreement their counsel drafted and signed on their behalf must be rejected and the settlement agreement should be enforced as a matter of law.

## II. LAW AND ARGUMENT

{437102:}                              8

A district court has the inherent authority to enforce a settlement agreement in litigation pending before it. Bamerliease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir.1992). Whether the agreement is oral or written, a plaintiff who knowingly and voluntarily settles his claims is bound by his agreement. Wyche v. Procter & Gamble, 772 F.Supp. 982, 984 (S.D.Ohio 1990). Ohio Courts recognize that the enforceability of settlement agreements are governed by general contract law:

> To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear, and if there is uncertainty as to the terms then the court should hold a hearing to determine if an enforceable settlement exists. Rulli v. Fan Co. (1997), 79 Ohio St.3d 374, 376, 377, 683 N.E.2d 337. However, "[a]ll agreements have some degree of indefiniteness and some degree of uncertainty. In spite of its defects, language renders a practical service. In spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make." 1 Corbin on Contracts (Perillo Rev. Ed. 1993) 530, Section 4.1.

Kostelnik v. Helper, 96 Ohio St.3d 1, 4, 770 N.E.2d 58 (Ohio, 2002).

It is not necessary or required for the parties to have reached a separate agreement on each aspect of the claim in order to have reached a settlement in full. Jennings v. Metropolitan Government of Nashville, 715 F.2d 1111, 1113 (6th Cir.1983). Indeed, silence on particular issues does not render the agreement unenforceable. If it is found that the parties intended to be bound, the Court should not frustrate this intention if it is reasonably possible to fill in some gaps that the parties have left, and reach a fair and just result. Barstow v. O.U. Real Estate III, Inc., 2002 WL 31108801, Ohio App. No. 01CA49, Athens County (Sept. 19, 2002), unreported.[4]

Ohio courts have ". . . refused to allow the unilateral rescission of [a] settlement agreement solely on the basis that the party seeking rescission had changed his mind and

---

[4] All unreported cases are attached hereto as Exhibit N.

{437102:}  9

become dissatisfied with the agreement." Mack v. Polson Rubber Company, 14 Ohio St.3d, 34, 470 N.E.2d 902 (Ohio, 1984). To permit a party to unilaterally repudiate a settlement agreement would render settlement proceedings a nullity, even though the agreement to settle is of binding force. Spercel v. Sterling Industries, Inc., 31 Ohio St.2d 36, 40, 285 N.E.2d 324 (Ohio, 1972).

The present case is unique from most cases considered by Courts where settlement agreements are sought to be enforced because Plaintiffs herein admit they agreed to settle the case on September 20, 2003. More specifically, on September 20, 2003, the parties memorialized the core terms of the settlement agreement in a writing drafted by counsel for Plaintiffs and signed by counsel for both parties. The core terms of the settlement are payment of $149,000.00[5] to all Plaintiffs and their counsel in exchange for a release of all claims which were brought or could have been brought in the action relative to the alleged non-payment of wages and a dismissal of all claims with prejudice. Clearly, there was an offer, acceptance and meeting of the minds concerning these essential settlement terms. The fact that not all issues were encompassed by the settlement agreement is inconsequential:

> An agreement is enforceable if it encompasses the essential elements of the bargain. Reck v. Daley (1943), 72 Ohio App. 307, at 315-317, 48 N.E.2d 879; Steigelmeir v. West Side Deutscher Frauen Verein (App. 1961), 88 Ohio Law Abs. 97, at 98-99, 178 N.E.2d 516; Perlmuter Printing Co. v. Strome, Inc. (N.D. Ohio 1976), 436 F.Supp. 409. Omission of less central subjects leaves those matters for later agreement or judicial resolution.

Mr. Mark Corp. v. Rush, Inc., 11 Ohio App.3d 167, 169, 464 N.E.2d 586, 589 (Ohio App. 1983).

Furthermore, to the extent any terms of the written agreement in this case are ambiguous, any such ambiguity must, as a matter of law, be construed against Plaintiffs, the

---

[5] As stated above, the agreement includes a payment of $5,000.00 to Teresa O'Brien who is not a party to this case, but is party to the separate action referenced herein before Judge Frost.

{437102:}  10

parties who drafted the agreement.  Sulit v. D. Boothe & Co., 2002 WL 207522, U.S.C.A. 6th Cir. Case Nos. 01-3353, 01-3354, (Feb. 8, 2002), unreported.  The core terms of the settlement agreement herein, i.e., the amount of the settlement payments in exchange for a release of claims and dismissal of the lawsuit with prejudice, are not and have never been in dispute.  While the parties differed on the language of the proposed mutual releases, Defendants communicated to Plaintiffs that they are in accord with the releases proposed in Plaintiffs' proposed September 30, 2003 settlement agreement.  Moreover, with respect to the mechanics of payment, Defendants' proposed non-admission of liability language and the language of stipulated judgments adopting the proposed settlement, these are non-essential issues which can be resolved by the Court.  Indeed, "[w]hen the parties have agreed about issues critical to the transaction, the courts will determine the meaning of ambiguous terms according to the parties' mutual understanding, the custom and practice in the trade or community, or other established legal principles."  Mr. Mark Corp., 11 Ohio App.3d at 167.

Ohio courts have enforced settlement agreements under circumstances similar to those in the case at bar.  In In Re Rhoads Industries, Inc., 162 B.R. 485 (Bankr. N.D. Ohio, 1993), the United States Bankruptcy Court for the Northern District of Ohio, applying Ohio law, enforced a settlement agreement notwithstanding the parties' failure to agree on non-essential terms.  In Rhoads, counsel for the debtor faxed to claimants' counsel a copy of a proposed settlement agreement containing a release of claims by the claimants against the debtor, in exchange for a $30,000 payment and a surrender of stock.  The claimants contended no settlement agreement had been reached.  The court disagreed and held that claimants' counsel had the authority to bind the claimants and that the material features of the agreement were contained in the proposed settlement agreement exchanged between

counsel. Thus, the court enforced the terms of the settlement as contained in the fax exchanged between counsel. Id.

In the present action, the case for enforcing the terms of the September 20, 2003 settlement agreement exchanged between counsel for the parties is even more compelling. In particular, counsel for both parties signed the letter indicating their respective clients' assent thereto. Moreover, the agreement was drafted by counsel for Plaintiffs, the parties who are improperly and unilaterally attempting to rescind the settlement agreement.

With regard to Plaintiffs' contention that they rescinded the settlement agreement because they were purportedly "misled" on the issue of insurance coverage, such contention is simply a desperate attempt on the part of Plaintiffs to disavow the agreement their counsel drafted and signed and which binds them as a matter of law. The law is clear that a party cannot unilaterally repudiate a settlement agreement which is already of binding force. Spercel, 31 Ohio St.2d at 40. In the present case, Plaintiffs' eleventh-hour claims of being "misled" on the issue of insurance are contradicted by the Initial Disclosures Plaintiffs admit they received nearly two years prior to the date on which this case was settled.

Furthermore, to the extent Plaintiffs claim they were unilaterally mistaken on the issue of insurance coverage, a claim which cannot be made in good faith in light of the clear import of Defendants' Initial Disclosures, such a mistake is not grounds for the unilateral rescission of the settlement agreement. Indeed, even assuming *arguendo* that the existence or non-existence of insurance coverage was material to the settlement agreement (a claim which Defendants firmly deny and a fact which was openly disclosed in any event), Ohio law is clear that relief for a unilateral mistake of fact will not be provided where the mistake is the product of the negligence of the party seeking relief. Marshall v. Beach, 143 Ohio App.3d 432, 437, 758 N.E.2d 247 (Ohio App. 2001). Plaintiffs herein cannot argue that

they were surprised or misled on the issue of insurance coverage because Defendants disclosed the existence of a policy of insurance which may be applicable to the claims in this action shortly after the commencement of the litigation. Counsel for Plaintiffs simply failed to request a copy of the insurance policy or make arrangements to inspect it. Moreover, Plaintiffs never conducted any discovery of any kind on the issue of insurance until <u>after</u> they already agreed to settle this case. Plaintiffs' counsel's negligence, lack of diligence or newly-found interest in the issue of insurance is not grounds for Plaintiffs' unilateral rescission of the settlement agreement. Plaintiffs' apparent "change of heart" regarding the terms of the settlement is inconsequential because Plaintiffs are legally bound by the terms agreed to by them and their counsel.

### III. <u>CONCLUSION</u>

The attached Exhibit A is a binding and enforceable settlement agreement. In fact, the law requires far less to establish the existence of a binding and enforceable agreement. The settlement agreement between the parties in this case is clear and unambiguous on all material terms and Plaintiffs are bound by those terms. For these reasons, and those stated above, Defendants respectfully request this Court to enter an Order enforcing the settlement agreement entered into by the parties and dismissing all remaining claims with prejudice.

Defendants respectfully submit that to the extent the Court determines an evidentiary hearing is necessary on these issues, Defendants hereby request an expedited hearing.

/s/ Douglas B. Schnee
WILLIAM J. O'NEILL (0029936)
DOUGLAS B. SCHNEE (0063643)
McDonald Hopkins Co. LPA
2100 Bank One Center, 600 Superior Ave., E.
Cleveland, Ohio 44114
(216) 348-5400/(216) 348-5474 - Fax

Attorneys for Defendants Debra Custer, J.

{437102:}   13

Larry Custer and K.C.J., Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this ___ day of October, 2003, a **Motion of Defendants K.C.J., Inc., J. Larry Custer and Debra Custer to Enforce Settlement Agreement and Dismiss Claims with Prejudice** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Douglas B. Schnee
WILLIAM J. O'NEILL
DOUGLAS B. SCHNEE

Attorneys for Defendants Debra Custer, J. Larry Custer and K.C.J., Inc.

{437102:}